## E. J. READ v. N. PATTERSON.

1. PRACTICE. *Depositions.* *Questions omitted.* Code, section 3859, declaring that the commissioner should require the questions to be reduced to writing, etc., is directory. It is advisable to insert the questions, as they often aid in the interpretation of the answers; but it is not essential to its admissibility that a deposition should be thus taken.

2. SAME. *Same.* *On whose behalf.* Where the deposition fails to show on whose behalf the deponent is a witness, it suffices if this fact appears from the notice.

3. SAME. *Same.* *Signature of witness.* Regularly a deponent should sign at the end of the deposition, but a deposition is not inadmissible because the deponent signed at the end of the commissioner's certificate.

4. SAME. *Same.* *Official character of commissioner.* It is sufficient if the official character of the commissioner appears from his signature at the end, though not stated in the body, of the certificate.

5. SAME. *Same.* *Postponement.* Where the notice is to take the deposition on a certain day, the officer cannot postpone to another day; but if the notice be to take on a day certain, and the deposition is then commenced, and it becomes impracticable to finish it that day, it may be finished the next.

Read v. Patterson.

6. ATTORNEY AND CLIENT. *Contributory negligence of client.* Where an attorney negligently fails, in violation of express instructions from his client, to issue execution upon a judgment, he is liable in any event for nominal damages, and if the judgment could have been collected by execution, and is afterwards lost through the insolvency of the debtor, he is liable for the full amount of the judgment; but if the client discharges the negligent attorney, and the judgment could then have been collected by execution, which the client negligently fails to have issued, and the debtors afterward become insolvent, the attorney is liable only for nominal damages, the negligence of the client being the proximate cause of the loss.

FROM HAYWOOD.

Appeal in error from the Circuit Court of Haywood county.   J. T. CARTHEL, J.

A. D. BRIGHT for Read.

W. A. ALLEN & SON for Patterson.

DEADERICK, C. J., delivered the opinion of the court.

In 1860 Patterson placed in the hands of Read three notes aggregating $1,200 or $1,300 on Klyce & R. G. Cates, for collection.   Read obtained a judgment on each note.   The judgments were stayed 8th of August, 1860, having been obtained before a justice of the peace.   In April, 1861, executions were issued on said judgments and severally returned "not satisfied." In April, 1866, an *alias* execution was issued upon each of said judgments, neither of which was returned up to the bringing of this suit in March, 1871, in the circuit court of Haywood county.

The declaration contains two counts, one for money had and received for the use of the plaintiff; the

other for failure to collect and pay over the debts above named.

The defendant pleaded *nil debit*, payment, *non assumpsit*, set-off and the statute of limitations of three and six years.

The verdict and judgment were in favor of the plaintiff for the whole amount of said judgments remaining unpaid, and the defendant has appealed in error to this court.

Defendant below took exceptions to the reading of the deposition of plaintiff, taken 19th and 20th of February, 1880, and filed seven specific exceptions.

The first, second and third exceptions are that the deposition is given without setting out in writing in the depositions the questions propounded to the witness, as prescribed by section 3859 of the Code. That section declares that the commissioner should require the questions to be reduced to writing and read over to the witness, etc. But it does not mean that a deposition not taken in this manner shall not be read. It is directory and is perhaps ordinarily the better mode of attaining an intelligible recital of the facts from the witness, as the question may often aid in the interpretation of the answer. But it is not essential to its admissibility that a deposition should be thus taken. It is the answer of the witness, and not the question that is reduced to writing, and what he says pertinent to the issues, whether elicited by verbal or written questions, constitutes his deposition. These exceptions were, therefore, properly overruled.

The third exception is because the caption is not

in accord with section 3848 of our Code, in this, that it does not show whether the witness was called for plaintiff or defendant, nor does it show his age, nor is it signed by the witness.

The notice is filed, pursuant to which the deposition was taken and shows that the plaintiff was to be examined in his own behalf. If this be material, it does sufficiently appear, and the age of the witness (seventy years), also appears. The witness also signs, but not at the usual place, at the end of the deposition, but at the end of the certificate of the justice and above his attestation. This is a sufficient signing of the deposition.

The fifth and sixth are exceptions of the character last named exception, and are untenable. The seventh and last exception is because the official character of the justice taking the deposition is not shown in the caption or certificate. The form in the Code, section 3848, does not contain any recital in the caption or certificate of the official character of the officer taking the deposition. It is sufficient if that fact fully appears in the signature of the officer as it does in this case at the end of his certificate.

There is, therefore, nothing in the exceptions taken, and they were all properly overruled by the judge, upon appeal from the action of the clerk.

A deposition of plaintiff below had been previously taken, and also the deposition of Lynd, his clerk, was taken at the same time. Notice was given to take these depositions on the 19th of March, 1872.

The depositions were voluminous and were not con-

cluded on the 19th day of March, but the commissioner, for this reason, adjourned until the next day at 9 o'clock, and then met at the same place. The witness Patterson, whose deposition was unfinished, concluded his deposition with one additional sentence of no great consequence.

It is true that it has been held that where the notice is to take the deposition on a certain day, the officer cannot postpone to another day: 11 Heis., 446. But if the notice be to take on a day certain and the deposition is then commenced, and it becomes impracticable to finish it that day, it may be finished the next. The defendant did not attend, and if he had applied the court might properly have allowed him to cross-examine. But the deposition ought not to have been rejected, and there was no error in the refusal of the court to reject it. But there seems to have been no action of the court invoked, upon defendant's appeal from the clerk's action in overruling the exceptions to the depositions.

We hold, therefore, that these depositions were properly admitted as evidence to go to the jury.

The record discloses that defendant is a practicing lawyer in Haywood county, and plaintiff a merchant in Cincinnati; that the plaintiff, in 1860, put in defendant's hands three notes of about $460 each on Klyce & Cates for collection; that judgments were obtained on said notes in said county, where the debtors resided, and in due time executions were issued thereon 9th of April, 1861, soon after the expiration of the stay. These executions were returned "not satisfied,"

20th of April, 1861, and *alias* executions were issued the same day and were never returned. A payment of $176 was made to defendant in a mule and other things, which he retained, on account of indebtedness to him by plaintiff for other professional services. No other payment was ever made except $700, which defendant remitted to plaintiff in July, 1867.

In the meantime the debtors were perfectly solvent, or at least one of them, Cates, and he remained good for the whole amount due until the 22d of May, 1879, when he transferred or sold his property, and thereafter nothing could be made off him by execution at law.

In December, 1868, plaintiff becoming dissatisfied with the delay in the collection of the judgments, ordered defendant "to turn the papers over to Mr. W. A. Allen," an attorney who was attending to other business for him. This, plaintiff and Allen state, he refused to do; and Allen states that he refused when he applied to him "to turn them over," until his fees were paid, and claimed a lien on the judgments for his fees. Afterwards plaintiff called at defendant's office in Brownsville, and the son and partner of defendant, as plaintiff states, promised if the matter was left with them, he would see that the judgments were collected.

In 1870, plaintiff states, the money not having been collected, and having been informed the claims were good, he instructed Mr. Allen, by letter, to call on Read, and if he did not settle to take the necessary steps "to force the matter to a finality," and to show Read the letter. Allen proves that he called on Read

and showed him plaintiff's letter, and he refused to give up the claims unless his fees were paid, and refused to make out his bill so that witness might send it to plaintiff.

Allen also states he had no control of the claims until in May, 1879, too late to have executions issued before sale of his property by Cates. But he knew the judgments were on the justices (Johnson's) docket since about the year 1869. This suit was brought by instructions of plaintiff, on March 14, 1871.

We do not see why defendant did not have the money made upon these judgments as he was repeatedly instructed to do. Nor can we conceive why the plaintiff himself or his subsequently employed counsel, did not resort to the simple and effective method of having executions issued upon the judgments of the justice of the peace. There were no papers in the hands of defendant to be obtained by plaintiff before resorting to this remedy. The officer to whom the executions might have been issued, could have levied it upon Cates' property, which was in Haywood county, and the evidence is full that he had more than enough to satisfy the debts, and there is no evidence to the contrary.

His Honor charged the jury, that for the omission to use ordinary diligence to collect the money, if no actual damage accrued, defendant would still be liable for nominal damages, but if actual loss or damage is shown he would be liable for the same.

His Honor also instructed the jury as follows: "If the makers of said notes, or the defendants, in the

judgments based on them, were good, and the defend-
ant failed to collect them for the want of the exercise
of ordinary diligence and said parties failed, and the
money could not afterwards be collected, defendant
would be liable to the plaintiff for any actual loss
that resulted from a failure to exercise ordinary dili-
gence." Further he says: "Defendant would only
be liable for damages or loss that may have resulted
during the time the claims were in his charge, or
under his control as an attorney. If the plaintiff
took the collection of said claims out of the hands of
defendant and placed them in the hands of W. A.
Allen as his agent and attorney, when the claims were
good and might have been collected by Allen, then
the defendant would not be liable for any actual loss
or damage at all." "If you find that said claims
were in judgments before a justice of the peace, and
the plaintiff or W. A. Allen knew where they were,
then plaintiff, or Allen as his agent, had the right to
take control of the judgments, and further turning over
of the claims by defendant was not necessary, when he
was discharged by plaintiff as his attorney, if he was
so discharged, and in such event defendant would not
be liable for any actual loss that accrued afterwards."

These instructions are, we think, correct, and fairly
present the theories upon which plaintiff would, or
would not be entitled to recover.

We may assume, as a consequence of the institution
of this suit, that defendant was then, if not before,
repudiated as plaintiff's attorney. It is certain that
his attorney, Allen, had knowledge as early as 1869

of the fact that the judgments remained unpaid, upon Johnson's docket.

Plaintiff had knowledge of the same facts as early as February, 1872, when he refers to them in his deposition of that date, and they are exhibited with the deposition of his book-keeper of same date. In fact, it is highly probable he knew all these facts at a much earlier period, although it does not distinctly so appear from the record.

Cates was perfectly solvent during all this time, and so remained up to the 22d of May, 1879. So the judgments could have been collected after the discharge of defendant as attorney, and after plaintiff knew where they were and all about them, and that they were unsatisfied. Such are the uncontradicted facts in this case, and there is no evidence in the record to support the finding of the jury against defendant for the whole amount of the balance due on said judgments. He was guilty of negligence for not collecting the money when he could have done it. But this negligence was not the proximate or natural occasion of the loss, for after this plaintiff himself might have collected the money.

The plaintiff ought to have taken steps to collect his judgments, after he had repudiated defendant as his attorney. There was nothing to hinder him from ordinary execution at any time, and although he may have a right to recover nominal damages for negligence of defendant, he has no right, by act or omission, so to conduct himself as to accumulate damages against defendant: Sedg. on Dam., 6th ed., 250.

Read *v.* Patterson.

The declaration as stated contains two counts, one for money had and received; the other, for failure to collect and pay over as he contracted, etc. It does not aver that the debts were lost by the defendant's failure, as in fact they were not, and upon this declaration he could only recover for money had and received, such damages as had accrued up to the time of suit brought for failure to collect, and not the whole amount of the judgments, as it is neither averred nor proved that they were lost by such neglect. On the contrary, the uncontradicted evidence in the record is that the debts could have been collected on said judgments at the very time this suit was begun, and for years before, and afterwards.

We are of opinion, therefore, that there is no evidence to support the finding of the jury against defendant, for the amount of the judgments. His Honor should have granted a new trial, and the judgment will be reversed.