**Reece STRICKLAN, Appellant,**

v.

**Carl KOELLA, Appellee.**

Court of Appeals of Tennessee, Western Section.

Sept. 20, 1976.

Certiorari Denied by Supreme Court Feb. 7, 1977.

John T. Buckingham, Knoxville, for appellant.

William P. O'Neil, Knoxville, J. Lewis Kinnard, Madisonville, for appellee.

NEARN, Judge.

The Trial Judge sustained defendant's motion for summary judgment in a legal malpractice case and the plaintiff has appealed.

These facts are undisputed: Stricklan was convicted of an assault and battery on the person of Lawson Underwood. Thereafter Underwood sued Stricklan in the Circuit Court seeking the sum of $125,000.00 as damages arising out of the assault and battery. Prior to engaging the defendant Carl Koella, a member of the Blount County Bar, to represent him in the defense of the civil suit, plaintiff Stricklan had engaged and disengaged the services of other lawyers. On March 25, 1974, which was seven days preceding the trial date of the civil suit, Stricklan fired Koella. On the day of trial, Stricklan, acting pro se, negotiated a settlement of the civil case against him whereby he paid the sum of $8,500.00 to Lawson Underwood in full satisfaction of her claim against him for damages.

On March 19, 1975, Stricklan filed suit against Koella seeking actual damages in the amount of $9,350.00 allegedly caused by the malpractice of Koella, plus an additional $250,000.00 for "damage to my reputation".

The original complaint is as follows:

"Malpractice in my Civil Suit Case # 2313 Monroe County, Tennessee

"On the 25th day of March 1974 I fired my Lawyer Carl Koella who I had hired to represent me in my case VS Lawson Underwood.

"When preparing for my case I had asked my Lawyer Carl Koella to take deposition from Lawson Underwood and her children, Susan and Paul David which was very vital to my case.

"Wherefor that the defendant intentionally did not get said depositions or withhelded from me and I did not have any material to go to Court to defend my case.

"I had to make settlement out of court the morning of the trial April 1, 1974 because I had nothing to defend my Case # 2313 because my Lawyer was not working in my behalf. He did not carry out our contract which I had hired and paid him to do.

"Wherefore I am demanding Judgment against Lawyer Carl Koella in the amount of Nine Thousand-Three Hundred-Fifty Dollars ($9,350.00) for damages and Two Hundred Fifty Thousand Dollars ($250,000.00) damage to my reputation and my cost of Suit herein incurred and demand a Jury to try the cause."

s/ Reece Stricklan

An amended complaint added the charges that:

"On November 14, 1973 I wrote my Lawyer Carl Koella asking him to summons the witness in my Criminal Case of January 10, 1972 the same case vs. Underwood to prove I did not get a fair trial at that time and he would not do that for me. "Also, I asked him to file papers to get my Case moved to another County because of the Judge kinfolk relationship to Mrs. Underwood here in Monroe County and that I could not get a fair trial and he would not do that for me. They had a Special Jury Panel for 1 day to try my case."

A second amended complaint, allegedly by Stricklan pro se, again charged Koella with negligence *regarding* the matter of depositions and averred *inter alia* that Koella had failed

"to properly take depositions even though the plaintiff requested and pleaded with the defendant to take the depositions of Lawson, Benny and Paul David Underwood, along with various other persons who testified at the Criminal Case # 3577 and who claimed to have material information concerning the claims of Lawson Underwood on how she received the injuries sued for in Civil Case # 2313 because there were contradictions in the testimony and there were unexplained time delays which were material to the case which could only be brought out by cross-examination and impeachment by prior prepared depositions;

\*    \*    \*    \*    \*    \*

"Due to the negligence of the defendant and the unprofessional, unskilled manner in which the defendant had handled the case, the plaintiff had no materials with which to try the case and was subsequently put into the position to have to settle the case out of court, because he was unable to employ another lawyer at that late date and could not obtain a continuance; "

\*    \*    \*    \*    \*    \*

Koella filed his answer denying any acts of negligence, admitting that plaintiff had insisted that Koella attempt to "change venue" and admitting that pre-trial deposi-

tions of the Underwoods were not transcribed and filed in the civil cause. Koella averred he did not move for a "change of venue" because the motion would have been improper and unfounded. Koella further averred that in his, Koella's, judgment the pre-trial discovery depositions which he did take of the Underwoods developed no discrepancies and would have been of no use in the trial. Therefore, he, Koella, did not order them transcribed and filed.

Essentially and in simple terms, the cause of action stated is that retained counsel refused to use the trial tactics insisted upon by the client, for which refusal retained counsel's services were terminated; that the refusal of counsel to try or prepare the case in the manner insisted upon by the client (by filing of depositions) caused the client to be without representation on the day of trial and forced the client into an expensive settlement without a trial of his case; that the plaintiff was substantially damaged by the negligence of defendant because if the case had gone to trial and if counsel had taken depositions in the manner insisted upon and if the plaintiff and her witnesses in the suit against Stricklan had testified in such manner so that discrepancies would appear between that testimony, if given, and discovery testimony, if taken, the jury (if there had been one) would have found in favor of Stricklan or if they found against him, would have found in a lesser amount than settled for if the jury would have considered the testimony discrepancy if it had appeared. All if the case had been tried in another county.

■ We hold that there can be no such cause of action in this state.

■ We are unable to find any case from this jurisdiction directly in point. Of course, there are cases which recognize a cause of action for legal malpractice. See *Hillhouse v. McDowell* (1966) 219 Tenn. 362, 410 S.W.2d 162; *Gay & Taylor, Inc. v. American Cas. Co. of Reading, Pa.* (1963 E.S.) 53 Tenn.App. 120, 381 S.W.2d 304; *Hill v. Mynatt* (1900 Tenn.Ch.App.) 59 S.W. 163. Ordinarily a lawyer, like a physician,

is liable for professional negligence. 87 A.L.R.2d 986; *Hill v. Mynatt, supra.* However, none of the Tennessee cases that we find recognize a cause of action for alleged negligence in the attorney's choice of trial tactics or conduct of the cause. In some states where such an action seems to be recognized, e. g., see *Olson v. North* (1934) 276 Ill.App. 457, such claims rarely, if ever, are successful. Detractors of the profession may imply that this is so because of the fraternal relationship between bench and bar. Such is certainly not the reason. In the English case of *Rondel v. Worsley*, reported as (1966) 1 All E.R. 467, (1966 C.A.) 3 All E.R. 657 and (1967 H.L.) 3 All E.R. 993, numerous reasons by judges were given for the holding that as a matter of law no action would lie against a lawyer by his client for negligence in and about his conduct of the client's case in Court. Some judges were of the opinion that since in England no action could lie against the client by the barrister for failure to pay a fee, the client could not sue the barrister for his conduct of the trial, the distinction between a solicitor and barrister being duly noted and recognition made of the existence of a cause of action against a solicitor. Other judges tended to base their conclusions on the fact that lawyers in the trial of cases, do not owe allegiance to the client only, but owe dual allegiance: one to the client and the other to the Court; and if a client were permitted to sue a lawyer for what the client believes to be negligent trial tactics, in that they did not inure (in the client's opinion) to the benefit of the client, a trial lawyer would find himself sued for following his allegiance to the Court. In describing this dualism the judges observed:

"[The lawyer] has a duty to the court which is paramount. It is a mistake to suppose that he is the mouthpiece of his client to say what he wants: or his tool to do what he directs. He is none of these things. He owes allegiance to a higher cause. It is the cause of truth and justice. He must not consciously mis-state the facts. He must not knowingly conceal the truth. He must not unjustly make a charge of fraud, that is, without evidence to support it. He must produce all the relevant authorities, even those that are against him. He must see that his client discloses, if ordered, the relevant documents, even those that are fatal to his case. He must disregard the most specific instructions of his client, if they conflict with his duty to the court."

Another Judge observed:

"There is another factor which I fear might operate in a much greater number of cases. Every counsel in practice knows that daily he is faced with the question whether in his client's interest he should raise a new issue, put another witness in the box, or ask further questions of the witness whom he is examining or cross-examining. That is seldom an easy question but I think that most experienced counsel would agree that the golden rule is—when in doubt stop. Far more cases have been lost by going on too long than by stopping too soon. But the client does not know that. To him brevity may indicate incompetence or negligence and sometimes stopping too soon is an error of judgment. So I think it not at all improbable that the possibility of being sued for negligence would at least subconsciously lead some counsel to undue prolixity, which would not only be harmful to the client but against the public interest in prolonging trials. Many experienced lawyers already think that the lengthening of trials is not leading to any closer approximation to ideal justice."

Additionally, in all negligence cases, whether they be automobile related or medical or legal malpractice related, before a recovery can be had, the nexus between the negligence and the injury must be shown. In a suit complaining of the manner in which proof was presented and the manner of examination and cross-examination of witnesses, only by pure guesswork can the verdict of a jury be examined and a so-called cause for that verdict be determined. No man shall suffer a judgment against him based on guess.

In the instant case, the cause would have to be determined by guesswork once removed. Since the defendant did not try the case, it would first be guessed what the jury would have done had the defendant tried the case in the manner he thought best. Then it would have to be guessed what the jury would have done had the case been tried according to the client's wishes. To state the position is to reject it.

We do not hold that there generally is no cause of action against an attorney for his negligence or malpractice; we only hold that for the reasons given, there can be no cause of action against an attorney arising out of the manner in which he honestly chooses to present his client's case to the trier of the facts.

The judgment below is affirmed.

Costs of this appeal will be adjudged against the appellant.

CARNEY, P. J., and MATHERNE, J., concur.