593 F.2d 33
 Joan WOODRUFF, Patricia Woodruff Hamilton and Louis
Hamilton, her husband, Plaintiffs-Appellants,
v.
Hewitt P. TOMLIN, Jr., Homer H. Waldrop, Roy Hall, and David
R. Farmer, Individually and as partners doing business under
the name and style of Waldrop, Hall, Tomlin & Farmer, a
Professional Business Association, Defendants-Appellees.
 No. 77-1216.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 30, 1978.
Decided Feb. 22, 1979.
Rehearing En Banc Granted May 24, 1979.
 
 Norman Herring, Phoenix, Ariz., James F. Schaeffer, Memphis, Tenn., by Norman Herring, counsel for plaintiffs-appellants.
 Leo Bearman, John J. Thomason, Memphis, Tenn., for defendants-appellees.
 Before EDWARDS, Chief Judge, and WEICK and CELEBREZZE, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 Plaintiffs-appellants' suit in the District Court was against an attorney at law and his law firm, to recover damages, alleging legal malpractice consisting of conflicts of interest and negligence in their representation of plaintiffs in personal injury actions arising out of a truck-auto collision, which actions the attorneys filed in plaintiffs' behalf in the state court, and which resulted in judgments against the plaintiffs. Jurisdiction in the malpractice action was based on diversity of citizenship.
 
 
 2
 The District Court granted defendants' motion to dismiss the complaint on the ground that plaintiffs' action was barred by Tennessee's one-year statute of limitations. T.C.A. 28-304. On appeal, we reversed and remanded for trial. Woodruff v. Tomlin, 511 F.2d 1019 (6th Cir. 1975).
 
 
 3
 On remand the case was tried before a jury on the issue of liability. The jury was unable to agree on a verdict and the court declared a mistrial. The defendants then filed a motion for judgment n. o. v. and for dismissal of the complaint, which motion was granted by the court in a Memorandum Decision reported in Woodruff v. Tomlin, 423 F.Supp. 1284 (W.D.Tenn.1976).
 
 
 4
 Plaintiffs have appealed therefrom to this Court. We are of the opinion that there were factual issues which should be determined by a jury, and not by the court, and that the court erred in summarily dismissing the conflicts of interest claim, in the exclusion of evidence, and in the granting of the motion n. o. v. We reverse.
 
 
 5
 The plaintiffs, Joan Woodruff and her sister Patricia, then 15 and 16 years of age respectively, were severely injured on May 22, 1968, when an automobile driven by Patricia and owned by her father, in which automobile Joan was riding as a passenger, was struck by a large truck loaded with gravel weighing about 73,000 pounds, on Highway 100 in Chester County, Tennessee. Joan was thrown out of the car and the truck ran over her legs, crushing the bones and tearing the skin off her legs, crippling her for life. Patricia sustained a skull and brain injury resulting in traumatic amnesia, so that she had no memory of the accident.
 
 
 6
 The girls' hospital bills alone exceeded $20,000.
 
 
 7
 The girls' father, Charles Woodruff, carried liability insurance on his car with Tennessee Farmers Mutual Insurance Company, with limits of $10,000 for one person, and $20,000 for more than one person. While the girls were in the hospital Theo. Leathers, the Claims Adjuster for the insurer, contacted Mr. Woodruff and gave him a check for medical reimbursement. Leathers advised Mr. Woodruff that he should retain a lawyer. Leathers told Mr. Woodruff that the statements of witnesses to the collision were inconsistent and were changing.
 
 
 8
 Leathers recommended to Woodruff that he retain Hewitt P. Tomlin, stating that Tomlin was a good lawyer. Tomlin was also the attorney for Tennessee Farmers Mutual Insurance Company. Woodruff then engaged Tomlin to represent his two daughters, and also to represent himself in his claim for damages to his car.
 
 
 9
 Tomlin filed two suits for personal injuries sustained by the girls and one for damages to the car, against Pomeroy, the driver of the large truck, Teague, the owner of the truck, and Nobles, the owner of the second truck. The suits were filed in the Circuit Court of Chester County, Tennessee.
 
 
 10
 Pomeroy, the truck driver, and Teague, the owner of the truck, filed suits in said Circuit Court against Patricia Woodruff and her sister Joan, to recover damages for personal injury sustained by Pomeroy, and for damages to the truck. They alleged negligence on the part of Patricia, and that Joan, the passenger, aided and abetted. Tomlin, as attorney for Tennessee Farmers Mutual Insurance Company, defended the suits against the two girls. The suits were all consolidated for trial.
 
 
 11
 The cases in the state court were tried before a jury, which disagreed 9-3, and a mistrial was declared. At the second trial in the state court the jury returned a verdict in favor of the defendants in the personal injury actions of Patricia and Joan against Pomeroy, Teague and Nobles. In the suit of Pomeroy and Teague against Patricia and Joan the jury returned verdicts in favor of Pomeroy for $600, and Teague in the amount of $3,000.
 
 
 12
 Upon appeal to the state court of appeals the judgments for the defendants in the personal injury cases of Patricia and Joan against Pomeroy, Teague and Nobles, were affirmed. The judgments in favor of Pomeroy and Teague against Patricia, totaling $3,600, were affirmed, but were reversed as to Joan, the Court holding that there was no evidence to prove that Joan, the passenger, aided and abetted in the negligence of Patricia. Therefore Joan was not contributorily negligent, and Patricia's negligence could not be imputed to her.
 
 
 13
 The appeals court then referred to damaging concessions made by Tomlin's law firm in their appellate brief, as follows:
 
 
 14
 In short, the fact is that there is material evidence in this record from which the jury could have concluded that Patricia Woodruff was guilty of negligence. This fact is conceded in appellants' brief and it is therein admitted that neither of the plaintiffs in the original cases of Patricia Woodruff vs. Nobles, Pomeroy and Teague, and in Charles Woodruff vs. the same defendants can now prevail. (App. 162-63)
 
 
 15
 As we will point out later, this damaging admission wrecked Joan's case for personal injuries against Pomeroy, Teague and Nobles. There was plenty of evidence of negligence on the part of the two truck drivers for submission of the issue to the jury. The issue of contributory negligence of Joan was eliminated from the case by the court of appeals. By reason of this wrongful admission, there was no issue for Joan to take her case to the Supreme Court of Tennessee. In effect what was done was to impute the negligence of Patricia to Joan, and the doctrine of imputed negligence does not prevail in Tennessee, as the state court of appeals held. See also Gulf, M. & O. R. Co. v. Underwood, 182 Tenn. 467, 187 S.W.2d 777 (1945).
 
 
 16
 The wrongful admission also ruined Patricia's case for negligence against Pomeroy, Teague and Nobles. As we will later point out, the state trial judge gave an erroneous instruction to the jury on last clear chance. Tomlin did not point out this error to the trial judge, and did not claim it as error in his motion for a new trial, and his law firm did not assign it as error in the state court of appeals. If they had done so, instead of making admissions against the interest of their clients, the appellate court, in all probability, would have reversed and remanded for a new trial. Their clients were deprived of their right to a new trial and their right to proceed against Pomeroy, Teague, or Nobles, or their insurers.
 
 
 17
 The malpractice complaint charges Tomlin with representing conflicting interests and with negligence in the investigation, preparation and trial in the circuit court and in the appeal in the state appellate court.
 
 
 18
 The most grievous of the allegations of negligence against Tomlin was his failure to object to an erroneous instruction on last clear chance, in the second trial, and to raise that issue on motion for a new trial, and on appeal. Also, complaint was made concerning his failure to call witnesses who had stepped off various skid marks; his failure to engage an accident reconstruction expert to testify as to critical issues at the trial; and his failure to support the charge of negligence against defendant Nobles in violating T.C.A. § 59-854(a) by driving slowly downhill, and in violating T.C.A. § 59-859 by stopping.
 
 
 19
 It is also contended that the District Judge erred in applying a standard governing liability of attorneys which would virtually exempt attorneys from any liability to their clients for malpractice.
 
 
 20
 At the time of the accident Patricia and her sister Joan were returning home from a trip to Chicasaw State Park. Patricia was driving her father's Chrysler automobile, with his permission. She had a driver's license. Patricia was driving in broad daylight, in a westerly direction on Highway 100, which is a two-lane, paved highway in Chester County. She was followed closely by another automobile occupied by a friend, Gail Sterling. Patricia, Joan and Gail Sterling all testified that Patricia was driving at about 55 miles per hour. The speed limit on the highway was 65 miles per hour.
 
 
 21
 When Patricia passed over the crest of a steep hill, to proceed downhill, a short distance from Chicasaw State Park, she was suddenly confronted with a very serious traffic problem. A small truck owned and operated by defendant Nobles was moving slowly down the steep hill, in the same direction as Patricia was traveling; he came to a complete stop about 300 feet ahead of Patricia and at a point opposite a dirt side road to the south. Approaching her from the opposite direction and at some distance was the large truck loaded with gravel, which truck was about 35 feet long, weighing 73,000 pounds. That truck was owned by G. L. Teague, and was being operated by his servant, James Pomeroy. Thus the two trucks impeded travel in both lanes of the two-lane highway.
 
 
 22
 Patricia applied the brakes of her car, which commenced to skid forward in her lane, and then sidewise over on the left side of the road until it came to a complete stop with the front of the car off the road, heading into a ditch, and the rear of her car protruding out into her left or south lane. After her car had stopped Patricia flicked the starter several times in order to start the motor of the car, but the starter did not work. The large truck then crashed into the right rear fender of her car.
 
 
 23
 There was evidence that the car was stopped in a position of peril about 5.9 seconds before the crash when the large truck was 168 feet away and then traveling at the rate of 30 miles per hour. The driver could have applied his brakes and stopped within 95 feet, or 73 feet before the collision. Actually the truck driver saw the auto skidding on his side of the road when he was 347 feet away from the point of impact. After the collision, and going up hill, the truck still continued to travel a distance of 112 feet, skidding 24 feet before the point of impact.
 
 
 24
 * CONFLICT OF INTEREST
 
 
 25
 Tomlin and his law firm were the attorneys for Tennessee Farmers Insurance Company, and had represented that company for a number of years. As before stated, it was the insurer's adjuster, Theo. Leathers, who recommended to the insured, Mr. Woodruff, that he engage Tomlin to represent the two girls in their personal injury cases, as well as to handle Mr. Woodruff's action for damages to his car, against Pomeroy, the truck driver, and Teague, the owner of the truck. The adjuster reported to Mr. Woodruff that the statements of witnesses were inconsistent, and were changing.
 
 
 26
 No doubt Tomlin became fully aware of the inconsistent statements of witnesses when he received the claim file from his client, the Insurance Company. He also learned of this fact when Pomeroy and Teague filed suit for damages against Patricia and Joan, alleging that Patricia negligently caused the injury to Pomeroy and the damage to the truck, and alleging that Joan, the passenger, aided and abetted Patricia.
 
 
 27
 Tomlin, in defending the suits of Pomeroy and Teague against Patricia and Joan, necessarily was contending until the case reached the appellate court, that Patricia was not negligent. He could not, therefore, very well have represented Joan in a suit against Patricia, which would have required him to allege that Patricia was negligent. Tomlin should have advised Joan to obtain other counsel.
 
 
 28
 In his deposition taken in the malpractice suit, Tomlin testified:
 
 
 29
 Q Of course, you, as a lawyer, knew that Patsy (Patricia), as the driver of the vehicle, could be responsible to Joan for her injuries; legally, that is?
 
 
 30
 A It is theoretically possible, yes.
 
 
 31
 Q And that a lawsuit could have been filed?
 
 
 32
 A A lawsuit could have been filed in theory, yes, sir.
 
 
 33
 Q Or a claim presented to Tennessee Farmers demanding payment?
 
 
 34
 A It could have been.
 
 
 35
 Q All right, and I take it from your answer to the previous question that you never did discuss this with the parents, and you have told me the reason, but you never did discuss it with them, is that correct?
 
 
 36
 A I never said to them or advised them that "You should present a claim to Tennessee Farmers," because they believed and I believed that Patricia was free of any negligence and they wanted her claim pressed, as well as Joan's.
 
 
 37
 Q Mr. Tomlin, the question was not whether you told them that they should. The question was, did you ever tell them that it could be done?
 
 
 38
 A To sit here and tell you specifically I told them it could be done, I can't dogmatically say that I did, but I can't dogmatically say that I didn't.
 
 
 39
 At this late date it was much more than mere "theory" that Joan had a right of action against her sister Patricia to recover damages if Patricia was negligent, since the jury had found that Patricia was negligent. Tomlin had an obligation to, and did, defend Patricia and Joan as insureds under the policy of liability insurance, as he was attorney for the insurer. Also the state appellate court found that Joan was not an aider and abetter; she was a passenger. Patricia's negligence could not be imputed to Joan.
 
 
 40
 If Joan had only been represented by other counsel, and had sued her sister Patricia for damages for personal injuries, the jury, having found that Patricia was negligent in the suits by Pomeroy and Teague, would necessarily have returned a verdict in favor of Joan against Patricia in Joan's case. Any other verdict could not be supported since the state court of appeals held that Joan was not an aider and abetter, and therefore was not negligent.
 
 
 41
 The District Judge in his opinion stated that the defendants claim that Joan was not covered under the liability policy of Woodruff. Defendants offered no such proof, and the undisputed fact is that Tomlin was defending both Joan and Patricia in the suit filed by Pomeroy and Teague.
 
 The District Court further stated:
 
 42
 In any case, it appeared to this court that this claim based on alleged conflict of interest on the part of defendant Tomlin should not be tried with the claims of negligence in losing the lawsuits and therefore it was, by pre-trial order, not dealt with at the trial. (App. 107)
 
 
 43
 The District Court cites no authority for such a proposition. This was a legal malpractice case. If conflict of interest should not be dealt with in a malpractice case, where should it be dealt with?
 
 
 44
 Malpractice is defined in Webster's New World Dictionary of the American Language, College Edition, with respect to persons other than physicians, as:
 
 
 45
 2. Misconduct or improper practice in any professional or
 
 
 46
 official position.
 
 
 47
 Negligence of an attorney in the investigation, trial, and appeal of his client's case is certainly improper practice in his professional capacity; it is malpractice. It is also malpractice for an attorney to represent parties with conflicting interests, without his disclosing all facts to his clients and obtaining their consent.
 
 
 48
 Canon 6 of the Canons of Professional Ethics of the American Bar Association provide in part as follows:
 
 
 49
 It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.
 
 
 50
 It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose. (Opinions on Professional Ethics, p. 22.)
 
 
 51
 The Supreme Court of Tennessee, effective August 31, 1948, in its Canon of Ethics 38 adopted the Canons of Professional and Judicial Ethics of the American Bar Association "now in force and as hereafter modified or supplemented." 185 Tenn. 889.
 
 
 52
 The American Bar Association has supplemented its Canons of Professional Ethics and the Supplements were adopted by the Supreme Court of Tennessee as shown in Volume 5A of Tennessee Code Annotated, on pages 119 and 115, respectively, as follows:
 
 
 53
 DR 5-105. Refusing to Accept or Continue Employment If the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer. (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).
 
 
 54
 (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).
 
 
 55
 (C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. (p. 119)
 
 Interests of Multiple Clients
 
 56
 EC 5-14. Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two (2) or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.
 
 
 57
 EC 5-15. If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients. (p. 115)
 
 
 58
 It is clear from the testimony of Tomlin that he made no disclosure to his clients of all the circumstances of his relations to the parties and of their connection or interest in the controversy, and that his clients never consented. Furthermore, in representing Patricia it was Tomlin's duty to contend that Patricia was not negligent, although he knew that this was a disputed issue of fact. In representing Joan it was his duty to contend that Patricia was negligent in order to maintain a claim against her and Woodruff's insurer. In fact, in the state court of appeals Tomlin's law firm made a damaging admission against the interests of their clients, as heretofore set forth.
 
 
 59
 As a matter of fact it appears that the state appellate court actually imputed Patricia's negligence to Joan, as there was ample evidence of negligence against Pomeroy and Nobles. The state appellate court should have remanded this issue for trial. It was for the jury to decide whether the two truck drivers were negligent. To correct this error Tomlin's law firm should not, in their appellate brief, have made admissions against the interest of their clients, and should have petitioned the Supreme Court of Tennessee for certiorari.
 
 
 60
 When the District Judge, in a pretrial conference, ruled that conflict of interest could not be considered in a legal malpractice case where negligence was also alleged, the plaintiffs petitioned our Court for a writ of mandamus and prohibition to obtain relief from this error.
 
 
 61
 In an order entered July 8, 1976, we held that no appeal lies from an interlocutory order except by leave of court, and that mandamus is an extraordinary remedy and can not be used as a substitute for an interlocutory appeal. Woodruff v. Honorable Bailey Brown, No. 76-1892, Court of Appeals, 6th Cir.
 
 
 62
 During the trial in the District Court plaintiffs again raised the conflict of interest issue and proffered proof which the District Court rejected, and declined to submit the issue to the jury, and finally dismissed the complaint when it granted judgment n. o. v.
 
 
 63
 In this direct appeal we now have jurisdiction to hear and to determine the issue of conflict of interest.
 
 
 64
 In our opinion it was prejudicial error for the District Court at its pretrial conference to separate and remove the issue of conflict of interest from other issues of malpractice, and to deny the admission of relevant evidence with respect thereto at the trial, and to decline to submit the issue to the jury for determination. If the issue of conflict of interest had been submitted to the jury it could have produced a different result.
 
 II
 OTHER GROUNDS OF MALPRACTICE
 
 65
 A The Erroneous Instruction On Last Clear Chance
 
 
 66
 At the second trial in the state court the trial judge submitted to the jury the issue of last clear chance. Although conflicting, there was substantial evidence requiring such submission, that Pomeroy, the truck driver, saw the Woodruff car in a position of peril when Pomeroy was a sufficient distance away that he could have stopped his truck and averted the collision, had he exercised ordinary care. Instead, he not only did not bring his truck to a stop, but after the collision he continued uphill about 112 feet from the point of impact.
 
 
 67
 The instruction given by the state trial judge to the jury on the issue of last clear chance was as follows:
 
 
 68
 I charge you that if you believe from the evidence that Mr. Pomeroy saw, or by the exercise of reasonable care, should have seen the plaintiff's vehicle in a position of imminent peril and in danger of being struck by the truck which he was driving, and you find that the defendant, Pomeroy, in time thereafter by the exercise of reasonable care with the means and appliances at hand on his truck, and with safety to himself and to his truck, could have stopped the same or could have decreased the speed of same or could have diverted the course of same, and thereby avoided the collision, the plaintiffs would be entitled to recover, Provided they are not guilty of contributory negligence that proximately caused the accident. (Emphasis added)
 
 
 69
 This instruction was clearly erroneous. Under the doctrine of last clear chance plaintiff's contributory negligence had ceased. It was no longer a proximate cause. The defendant saw the plaintiff in a position of peril in sufficient time that he could have averted the collision had he exercised ordinary care.
 
 
 70
 The instruction of the trial court defeated the entire purpose of the doctrine. It conflicted with a decision of the Supreme Court of Tennessee in Vaughn v. City of Alcoa, 194 Tenn. 449, 251 S.W.2d 304 (1952). It also conflicted with our decision applying Tennessee law in Smith v. Beattie, 346 F.2d 139 (6th Cir. 1965).
 
 
 71
 It is argued that the erroneous instruction is supported by an appellate decision in Smith v. Craig, 484 S.W.2d 549 (Ct.App.Tenn., Cert. denied Aug. 7, 1972). The Supreme Court of Tennessee repudiated Smith v. Craig, supra, in Street v. Calvert, 541 S.W.2d 576 (1976).
 
 
 72
 The trial judge, in giving the erroneous instruction, was bound by the decision of the Supreme Court of Tennessee in Vaughn v. City of Alcoa, supra, rather than by an erroneous decision of an inferior appellate court.
 
 
 73
 Tomlin did not even object to the erroneous instruction in the state court trial, nor request the court to change it. He did not assert it as error in a motion for a new trial filed in the state court, nor did he assign it as error in the state court of appeals.
 
 
 74
 It was error for the District Court to grant judgment n. o. v. as this vital issue of malpractice should have been submitted to the jury for determination, and could have produced a different verdict. Expert testimony on this issue and on proximate cause was offered by plaintiffs in the malpractice trial.
 
 B Failure To Call Witnesses
 
 75
 It is not understandable why Tomlin did not offer expert testimony at the second trial in the state court, namely, an accident reconstruction expert, to refute the testimony of Col. Dawson, the expert offered by the defendants. Dawson was a state police officer.
 
 
 76
 In the malpractice case, to defend himself and his law firm, they called as expert witnesses three attorneys and the state court trial judge. They also took the deposition of the state appellate court judge who wrote the opinion affirming the judgment of the trial court, which was offered in evidence. It was certainly unprecedented to call as witnesses the judges who decided in their favor, and to support their decisions.
 
 
 77
 Canon 2B of the Code of Judicial Conduct provides that the Judge "should not testify voluntarily as a character witness" because it would inject the prestige of his office into the proceeding to which he testifies.
 
 
 78
 In the present case no criticism can be levelled at the state court judges for testifying in favor of the attorneys for a party to a case, in whose favor they decided, because the judges in testifying responded to subpoenas issued by the defendants.
 
 
 79
 It should be observed, however, that if the attorneys had exercised the same degree of diligence, by calling at least one expert witness, in handling the case for their clients as they did in defending themselves in the malpractice case, the result in the state court personal injury cases might well have been different.
 
 
 80
 Mr. Woodruff also testified that he requested Tomlin to call as a witness, Gene Burkhead, who could testify as to the negligence of defendant Nobles, and also could support the testimony of Joan, but he was never called as a witness.
 
 
 81
 Mr. Woodruff further testified that he advised Tomlin that his adult son Eddy and a neighbor, James McClendon, went to the scene of the accident and stepped out the skid marks on the pavement, laid down by the Woodruff car, as sixty paces, or 180 feet, which conflicted with the testimony of Col. Dawson, a police officer, who testified at the first trial to skid marks of 252 feet, but Tomlin never called them as witnesses. Tomlin did not even interview Col. Dawson, claiming it would be unethical for him to interview defendant's expert witness. We see nothing unethical for a lawyer to interview a state police officer.
 
 
 82
 After the first state court trial Mr. Woodruff was advised by one of the jurors and by friends that the plaintiffs could not obtain a fair trial in Chester County, and he requested that the cases be removed from that county. Tomlin advised Woodruff that this could not be done. Tomlin admitted in his deposition, however, that the plaintiffs could have dismissed their complaints without prejudice and refiled in the federal court. It was at the second trial in the state court that Nobles had contact with one of the jurors relating to coon hunting on his farm. This at least was admittedly erroneous advice given by Tomlin to his client.
 
 
 83
 C Tennessee Law Applicable To Legal Malpractice
 
 
 84
 In granting defendants-appellees' motion for judgment n. o. v. after the jury could not agree on a verdict, and the court had granted a mistrial, the court relied on two grounds. First, the District Court accepted a Tennessee Court of Appeals decision in Stricklan v. Koella, 546 S.W.2d 810 (1976), Cert. denied by the Tennessee Supreme Court (1977), as the law of legal malpractice liability in Tennessee for negligence in the investigation, trial, and appeal of a personal injury and property damage suit. The second ground for the District Court's dismissal was that the harm done to appellants, if any, was speculative and therefore was not within the province of the jury.
 
 
 85
 The District Court rested its decision on a statement in Stricklan, supra, that in Tennessee no cause of action exists based on a lawyer's refusal to prepare a case in the manner insisted upon by the client. In Stricklan attorney Koella was retained by the plaintiff to defend him against charges of assault and battery. The client discharged Koella shortly before the trial date because Koella refused to introduce certain depositions, refused to call certain witnesses, or to conduct certain cross examination at the upcoming trial. After paying an expensive settlement without the benefit of counsel, the client sued Koella for the amount of the settlement and costs, and for $250,000 for damage to his reputation.
 
 
 86
 In addition to suing Koella for his refusal to conduct the upcoming trial as directed, the client also sued Koella for declining to move for a change of venue. Koella answered that a motion for change of venue would have been unfounded and improper and would not have been granted. In the present case the attorney gave admittedly incorrect legal advice to his client concerning the client's right to voluntarily dismiss his action without prejudice and to sue in the federal court.
 
 
 87
 Koella further answered that the pretrial discovery depositions in issue in his judgment developed no discrepancies in testimony and would have been of no use in the upcoming trial. The defendant's motion for summary judgment was granted.
 
 
 88
 In the present case the District Court was of the opinion that the holding in Stricklan prevented the Woodruffs from suing for negligence in the investigation, trial, and appeal of their personal injury suit.
 
 
 89
 We believe that the District Court misapplied Stricklan. There was no actual trial in Stricklan, and there was no evidence of any negligence on the part of Koella, either by expert witnesses or otherwise. An attorney, like any other professional, is liable for acts of negligence in the conduct of his professional work. He has a duty to possess and to use that degree of skill, competence, and learning ordinarily possessed and used by others in the same profession, under like and similar circumstances. An attorney who fails to perform his duties for his client in accordance with accepted standards of legal practice is negligent. He is liable for damages proximately caused to the client thereby. Restatement (Second) of Torts § 299A (1965); Prosser, Law of Torts § 32 (4th ed. 1971). A lawyer is not exempt from malpractice liability for trial related work.
 
 
 90
 Although there is no Supreme Court of Tennessee decision directly on the precise points involved in the present appeal, we believe from a survey of Tennessee law that the Tennessee Supreme Court would hold lawyers liable for negligence in the investigation, trial, and appeal of actions when that negligence proximately injured a client.
 
 
 91
 An attorney is not liable for mistakes in judgment or for tactical decisions, but he is liable for negligence that proximately causes injury to his client. Canon 6 of the Tennessee Code of Professional Responsibility requires a Tennessee attorney to represent a client competently, to prepare adequately, and to give appropriate attention to his work. The Tennessee standard for malpractice liability was set forth by the Tennessee Supreme Court in In re Woods, 158 Tenn. 383, 389, 13 S.W.2d 800, 803 (1929), as follows:
 
 
 92
 (W)hile an attorney does not guarantee the accuracy of all he does, he is bound to exercise reasonable skill and diligence in attending to business intrusted to his care and he is bound to possess such reasonable knowledge of well-settled rules of law as will enable him to perform the duties he undertakes.
 
 
 93
 See also Hillhouse v. McDowell, 219 Tenn. 362, 410 S.W.2d 162 (1966).[1] The Stricklan decision itself recognizes that a Tennessee attorney may be held for legal malpractice.[2] The same standard is applied to all attorneys in the state.
 
 
 94
 Older Tennessee decisions reflect a tradition in Tennessee jurisprudence of holding an attorney responsible for damages flowing from negligence in the conduct of his professional duties. Collier v. Pulliam, 81 Tenn. 114 (1884), Read v. Patterson, 79 Tenn. 430 (1883); A.T. Bruce & Co. v. Baxter, 75 Tenn. 477 (1881); Bills v. Polk, 72 Tenn. 494 (1880).
 
 
 95
 We do not agree with the District Court that the harm, if any, done to appellants in the present case was speculative and therefore beyond the province of the jury. Causation, historically, has been determined by the jury in all cases involving breach of a standard of reasonable care. In the present case negligence and causation were testified to by plaintiffs' expert.
 
 
 96
 To recover, plaintiffs must show and convince the jury that, but for the negligence of defendants, the action would have been successful. Collier v. Pulliam, supra. See also Maryland Cas. Co. v. Price, 231 F. 397 (4th Cir. 1916), Spangler v. Sellers, 5 F. 882 (C.C.Oh.1881), Sitton v. Clements, 257 F.Supp. 63 (E.D.Tenn.1966), Aff'd 385 F.2d 869 (6th Cir. 1967), McLellan v. Fuller, 226 Mass. 374, 115 N.E. 481 (1917), Vooth v. McEachen, 181 N.Y. 28, 73 N.E. 488 (1905).
 
 
 97
 The damages recoverable would be the full value of the claim lost. See A.T. Bruce & Co., supra, at 481; Annot., 45 A.L.R.2d 62-71 (1956).
 
 III
 
 98
 We find no error in the District Judge's denial of a motion filed by the plaintiffs to require his recusal under 28 U.S.C. § 455(a). Such recusal cannot be based on decisions or rulings of a Judge. Oliver v. Michigan State Bd. of Educ., 508 F.2d 178 (6th Cir. 1974), Cert. denied, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975).
 
 CONCLUSION
 
 99
 We are of the opinion that, as pointed out hereinbefore, just too many things went wrong prejudicially affecting the substantial rights of their clients, to absolve the defendants from liability for malpractice. The most grievous errors are the conflicts of interest, the prejudicial and improper admissions against the interests of their clients in the state court of appeals, and the mishandling of the issue of last clear chance.
 
 
 100
 The judgment of the District Court is reversed and the case is remanded for a new trial.
 
 ORDER
 
 101
 A majority of the Judges of this Court in regular active service have voted for rehearing of this case en banc. Sixth Circuit Rule 14 provides as follows:
 
 
 102
 "The effect of the granting of a hearing en banc shall be to vacate the previous opinion and judgment of this Court, to stay the mandate and to restore the case on the docket as a pending appeal."
 
 
 103
 Accordingly, it is ORDERED that the opinion and judgment of this Court filed February 22, 1979 is vacated, the mandate is stayed and the case is restored to the docket as a pending appeal.
 
 
 104
 It is further ORDERED that counsel for the appellants may file any supplemental briefs by July 9, 1979 and that counsel for the appellees may file any supplemental answer brief by August 20, 1979. The Clerk will schedule the case for oral argument during the October, 1979 session.
 
 
 
 [1]
 For lower court cases see Holcomb v. Steele, 47 Tenn.App. 704, 342 S.W.2d 236 (1958), Hill v. Mynatt, 59 S.W. 163 (Tenn.Ct.App.1900)
 Other jurisdictions recently have required ordinary care, skill, and diligence from attorneys, or, as it is alternatively phrased, that degree of care, skill and diligence which is commonly possessed and exercised by attorneys in practice in the jurisdiction. Smith v. Lewis, 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589 (1975), Cook, Flanagan & Berst v. Clausing, 73 Wash.2d 393, 438 P.2d 865 (1968). This standard is well supported historically. See, e. g., Goodman & Mitchell v. Walker, 30 Ala. 482 (1857), Gambert v. Hart, 44 Cal. 542 (1872), Cox v. Sullivan, 7 Ga. 144 (1849), Stevens v. Walker & Dexter, 55 Ill. 151 (1870), Babbitt v. Bumpus, 73 Mich. 331, 41 N.W. 417 (1889). See also Skillen v. Wallace, 36 Ind. 319 (1871), Gilbert v. Williams, 8 Mass. 51 (1811).
 For further discussion and authority see Annot., 45 A.L.R.2d 5-58 (1956).
 
 
 [2]
 In Stricklan, supra, 546 S.W.2d at 812-13, the Court said:
 Of course, there are cases which recognize a cause of action for legal malpractice. See Hillhouse v. McDowell, (1966) 219 Tenn. 362, 410 S.W.2d 162; Gay & Taylor, Inc. v. American Cas. Co. of Reading, Pa., (1963 E.S.) 53 Tenn.App. 120, 381 S.W.2d 304; Hill v. Mynatt (1900 Tenn.Ch.App.) 59 S.W. 163. Ordinarily a lawyer, like a physician, is liable for professional negligence. 87 A.L.R.2d 986; Hill v. Mynatt, supra.
 The Court further said (546 S.W.2d at 814):
 We do not hold that there generally is no cause of action against an attorney for his negligence or malpractice; we only hold that for the reasons given, there can be no cause of action against an attorney arising out of the manner in which he honestly chooses to present his client's case to the trier of the facts.