7L 477
13L 118

A. T. BRUCE & CO. *v.* JOHN BAXTER.

1. STATUTE OF LIMITATIONS.  *Attorneys.*  Six years, and not three, is the period of limitation in a suit against an attorney for negligence or failure of duty in collecting claims placed in his hands for collection.

2. PLEADINGS AND PRACTICE.  *Attorneys.* *Negligence.* *Evidence.*  A party seeking to recover for negligence, must allege it and damages, and prove both, in order to recovery against an attorney in such case.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

CORNICK & CORNICK for complainants.

W. M. BAXTER for defendant.

FREEMAN, J., delivered the opinion of the court.

This bill is filed for an account as to various claims placed in the hands of defendant, for collection as attorney. It seeks to charge defendant on two grounds: First, negligence in not collecting certain claims specified; and second, that certain moneys have been collected, and money not accounted for.

We think it not improper to say, that the case seems, in one aspect of it, to present a *prima facie* case favorable to the defendant—at least one of more than ordinary success in collection of debts placed in his hands, in the disturbed and distracting state of the country at the time, that is, from 1863 and the years following. Upwards of sixty thousand dollars on various parties in East Tennessee and some in North Carolina, were thus entrusted to him, and we believe upwards of $54,000 collected and accounted for. But as negligence in regard to specific claims is alleged, we are compelled to look at the details of the transaction, and dispose of each case on its merits, from the proof in the record.

A preliminary question, however, is presented, based on a plea of the statute of limitations of three years, interposed by respondent, so far as the complainants' case rests on the charge of negligence.

This was not the appropriate statute, and interposed no bar to complainants' recovery. Sec. 2773 of the

Bruce *v.* Baxter.

Code gives three years as the period to form the bar, in actions for injuries to real or personal property, and the next section, in favor of sureties of collecting officers for failing to pay over money collected, etc. Neither of these sections cover the case. No damages for injury to property, real or personal, is sought to be recovered, nor is the defendant surety for any collecting officer.

The section applicable is 2775, last clause: "Actions on contracts not otherwise provided for, within six years after the cause of action accrued." The recovery is claimed on the ground of breach of contract to collect, which involved an obligation to use reasonable diligence in doing what was undertaken, under all the circumstances of the case; and a failure to use such diligence, resulting in a loss to complainant, would make the attorney liable to the extent of such loss, no further: Wait's Act. and Def., vol. 1, 445; secs. 1 and 2, 459–60. Since the liability grows out of breach of contract, it is within the terms of the above section—not being provided for by any other.

In so far as any recovery is sought on the idea of a failure to deliver up any claims in his hands to the attorney who succeeded him, as seems to be one theory of a part of the bill, it may be this bar would apply, as it would go on the assumption of a conversion of a chose in action. We do not understand this, however, to be insisted on.

We need scarcely cite authorities to refute the argument of the respondent, so earnestly pressed on us, that he can have the benefit of the statute of limita-

tions of six years, without having claimed it in his defense, by answer or plea. The law has been too long settled the other way in our State to be shaken, and we think correctly. It is a defense that is at the option of defendants, which they can waive or not, if they choose. If intended to be insisted on, it should be claimed, and the other party thereby notified, as he may be able to show a new promise, reviving the liability: 1 Heis., 701.

The chancellor did not err in refusing to permit the plea of statute of six years to be filed on the hearing. It was possibly within his discretion to have done so, but not to do it was certainly not error.

We now proceed to the particular claims specified. The claim based on the failure to collect interest on the Kennedy note, we think, was properly decreed against defendant. He had sued on the note, recovered judgment, but left the calculation as to the amount due to the clerk, who failed to include the interest, or at any rate failed to enter up judgment for it. We think this was negligent oversight, and as the claim is now barred by the judgment, the respondent was properly held liable for it.

As to all the other claims alleged to have been neglected, we think the principle of the chancellor's decree on its face is erroneous. It is that the respondent is liable for the whole amount of these claims, unless he shall show, that within a reasonable time after his receipt of them, either by himself or his agent, he sued or caused suit to be brought, or used proper and reasonable diligence to collect the same, or

the same was not lost by reason of his neglect. The chancellor, it seems, does not assume that culpable neglect has been proven on the whole case, but that the respondent is *prima facie* liable, until the contrary is shown. In this he erred. The true principle is thus stated as the result of authorities cited, in Wait on Act. and Def., vol. 1, 445: "When a person adopts the profession of the law, and assumes to exercise its duties in behalf of another for hire and reward, he must be held to employ in his undertaking a reasonable degree of care and skill; and if any injury result to the client from want of such reasonable care and skill, the attorney must respond to the extent of the injury sustained."

This being the rule, the complainant asserts a liability by reason of want of proper diligence and care in the attorney. As this is the ground of the liability, he must make it out by proof, and the extent of the damages so resulting to him. It is the want of proper care, or rather, the affirmation is, that there was negligence, and this negligence must be fairly made out, or else no recovery can be had at all. When the negligence is shown, then as a result, damage, and the extent of it must be shown—the latter being the measure of the recovery. The case of the Kennedy claim, above referred to, illustrates the principle. There was neglect in not having a judgment for interest. It is conceded he was good—the principal collected—the damage is clear, the amount ascertained. If his Honor had adjudged that the claims might have been made except for neglect, and then had given the at-

torney a chance to show the contrary, this would have been an irregular practice, as adjudging only part of the case, or on a *prima facie* case, and then on the account allowing respondent to rebut the case thus found. But the defendant could not have complained of having a second chance to clear himself from liability. But such is not the assumption of this decree, as we understand it.

On the principle we have stated, we will now dispose of the other matters, as far as we can do so without retaking the account, and give the principle or rule by which any subsequent matter is to be investigated and result ascertained, on taking such account as may be necessary.

First, the claim against Conant Hamilton. The loss is alleged to have been in consequence of failure to file said claim in time against Hamilton's estate, so that the statute of limitations barred it. The estate is proven to have been administered as insolvent; whether anything, or how much, would have been realized on it, if filed in time, is not shown. There was certainly negligence in not filing the claim; but loss as well as negligence must be shown in order to recovery—no such loss is shown.

The Tibbs claim is not shown to have been neglected. Large sums were collected out of these parties by respondent, through other attorneys. The proof shows that nothing more could have been made out of him; at any rate, it is not shown affirmatively that any more could—and this is required.

The claims received of Shields are made the basis

of a contest. It is first claimed in the bill, that respondent had no right to make a compromise of the debt in his hands and receive notes on other parties. This is clear as a matter of law; but the action of the attorney is definitely shown to have been ratified and approved in fact, and in addition the transaction is ratified by the bill on its face. It seeks an account of these claims received, and this necessarily affirms the action of the attorney in receiving them.

As to all these claims, we see no proof of any affirmative neglect—only one admits of any discussion, that on James Park. The fact that Judge Shields considered them good when he paid them over to Champion, of the firm of Baxter & Champion, does not prove that they were guilty of negligence in not collecting all of them, as some may have become insolvent after this, even with active diligence, especially in those disturbed and uncertain times. The compromise is shown to have been a most favorable one—much better than many other northern creditors realized on their claims.

The claim on James Park is not clearly explained. Judge Shields says it was upwards of $200; respondent collected only $91 and remitted it. Park swears this is all that was due, and files the note with credits, showing he was certainly correct. We must assume that Judge Shields had forgotten the exact amount. Respondent, in this view, is shown to have received all that was due, and owes nothing on this score.

There can be no liability predicated of failure to

hand over claims to Messrs. Cornick & Cornick, as the only proof is that of Judge Baxter himself, who says, when it was mentioned on the street to him, he promptly agreed to do so whenever the attorney would call at his office, but that he never did so; until that was done, after such conversation, he was in no default. His office was the place to do such business, and he was not bound to seek the party wishing such claims. and tender them.

This, we believe, disposes of all the matters, except respondent's claims for services in case of claims uncollected. He had retained over $200 of his last collections for settlement, as he says, of fees still due him. He files a cross-bill to get the set-off as well as the discovery claimed.

On this question my brother judges hold he is not entitled to recover anything except in cases of collections actually made. They hold that he voluntarily abandoned the contract, assented to a surrender of the claims then in his hands, and not having made collection, he is not entitled to any compensation for any services rendered before this in and about such claims; that he was only to receive on collection five per cent., and this he had received on such claims as were collected, and this is all he is entitled to. From this view I dissent.

The facts raising the point of difference between myself and my brother judges are, that Baxter received some sixty thousand dollars in claims for collection from complainants. The rate of compensation was to be five per cent. on amount of collections. He col-

lected the larger part of the claims, but the parties disagreeing, the business was turned over by complainants to other attorneys, with the consent of Baxter. He now claims to be paid for such services as had been rendered about claims uncollected, such as obtaining judgments, or other professional atttention given such claims, while in his hands.    I hold, for reasons that I propose to give, that he is entitled to compensation on the basis of a *quantum meruit* for such services—the majority hold the contrary.    My reasons, or some of them, are as follows:

I assume the contract has not been performed in the case of claims uncollected at the time Baxter was discharged, by mutual consent;   therefore he could not collect five per cent. per contract.    This is clear. But is he entitled to anything for services actually performed, not amounting to collection, but in part performance, such as obtaining judgments on claims?    I think it unquestionable under our decisions he is, and this whether he be discharged for cause, and properly, or without this, or the contract be abandoned by mutual consent.    The English rule is, as stated by this court in *Jones* v. *Jones*, 2 Swan, 608, he could not recover at all when discharged for cause.    He was required to aver performance, or some fault on the part of the defendant, which excused his non-performance.    But this course lays down a different rule as follows:  " But upon principle as well as authority we think he is entitled to recover upon the common counts, a *quantum meruit*, for any services performed before he was discharged."    For this several cases are

cited. It is obvious, adds the court, that the amount of his recovery in this respect will depend on the merit of his claim, as it may appear to the jury. If he merit nothing, he will receive nothing; but if his services have been useful to defendant, while in his employ, he will be entitled to recover *pro rata* according to their value.

In a previous part of the opinion, the court lay down the rule of recovery on the contract thus: "That if plaintiff voluntarily abandoned the defendant's service, without sufficient cause, *and* against his will, he would not be entitled to recover, that is, on the contract." Now the case in hand is one of abandonment by mutual consent, upon disagreement of the parties. It certainly cannot be, that if the party is discharged for good cause, he can recover for services actually rendered on *quantum meruit*, and yet when he leaves by the consent of the employer, he has no such right. This is to impose a harder rule in the case of an agreed, assented to, abandonment, than where the discharge is the result of misconduct and a breach of duty. The two rules would be essentially contradictory, the one to the other.

It is argued, however, that the attorney contracted for five per cent. on collections, and not having collected, is to have nothing—and has been paid as far as he has performed the contract, that is, as far as he has made collections. This is putting his rights alone on the contract, which has been abandoned. It is conceded he cannot go on the contract. But that being abandoned, whether by discharge or breach, a

failure to perform, or by consent, he is entitled to recover for valuable services rendered while engaged in the employment, and to the extent of their actual value—not on the contract, but on *quantum meruit*—and so are all our cases in an unbroken line of decision. The confusion arises in this case from the fact that the contract embraced numerous claims, and was performed at different times by collection of single claims, and this service paid for as contracted. This was payment for actual performance of the contract, and as was contracted. But as to the part not performed entire, so as to entitle to a recovery on the contract, where services have been rendered, the claim is only on a contract to be implied by law, for reasonable value of such service. I am unable to see on what principle a party discharged from service for misconduct or breach, can recover the value of services performed up to the time of discharge, and one who abandoned a contract by mutual consent, is to be debarred from receiving compensation for what he has done. For these reasons I dissent from the conclusion of a majority of the court as to the point indicated.

We all agree Baxter is entitled to be reimbursed for such sums as he may have paid out by reason of his having been surety, or otherwise, in the way of costs in courts, for the benefit of complainants.

A decree will be drawn on this basis and the case remanded, if desired, or the account can be taken here.

Costs of the cross-bill will be paid by Baxter in this and court below. Costs of the original bill will

be paid, one-half by complainants in court below, the other half by Baxter. The costs of this court will be paid by complainants, except as to cross-bill.

Upon petition to rehear, FREEMAN, J., said:

A petition for rehearing having been filed in this case, we have again carefully examined the record. We deem it proper to say, that on the petition for rehearing, there is nothing new, we believe, presented that was not presented in the first argument. We have not time to reargue questions with counsel, however earnestly they may deem it their duty to press their cases. Their zeal is commendable, but there is too great a pressure of labor on us, to allow time for reargument in support of a conclusion once announced. We in some degree depart from the proper rule in this case, partly out of respect for the counsel, who asks the rehearing, and partly to explain more fully the views and conclusions now announced, modifying the former result.

The principle on which the case was decided is, that when a party seeks to make an attorney responsible to him for negligence in the collection of a claim, and charges, as in this bill, such negligence, and that by reason of the particular negligence alleged he has lost his debt, that he must prove his charge as made, that is, that there was negligence and loss by reason of it. Says Mr. Wait, Act. and Def. vol. 1, 459 and 460: " It has been held actionable

for an attorney to bring suit, and lay the venue in the wrong county, to bring his action in a court having no jurisdiction, or to delay bringing suit until it is too late to be available, and the claim is lost; so, if he disobeys instruction of his client, and *loss* ensues, he is responsible." In every case we have seen there must be shown that the debt or part of it has been lost, or the client been injured by the act complained of, before he is entitled to make the attorney responsible for it. Numerous cases, both English and American, are cited for the rules thus stated.

We add another ground on which complainant would fail to recover more than formerly allowed in the opinion in this case. It is proven by respondent, that many of the claims received, were in portions of East Tennessee where he did not practice, some in North Carolina, and that it was distinctly agreed that he was to use his best judgment and discretion in such cases, and send them for collection to other attorneys. He shows that the Tibbs claims, as they are called, had been sent to Bryant, who seems to have collected, by the aid of respondent, a large amount of the same. In 1867, respondent stated in a letter, that he found an account had not been sued on, and would try to have it collected He swears this account was against Surgoine & Tibbs, and he did send to Mayfield & Hoyle, at Cleveland, who sued on it, got judgment for the principal, which was collected and remitted, but that the jury refused to give interest, and no more was recovered, as he explained to complainants. Complainants say this was an account for $228 on W. H.

Tibbs. Baxter says in his deposition, his letter of September, 1867, referred to the Surgoine & Tibbs account of $443—in fact it so appears on the face of the letter, though the amount is not given. We see no reason why Baxter should not be believed as to what account he referred to. Suffice it to say, we see no cause to change our conclusions in this matter.

As to claims received by Gen. Champion from Shields, trustee, they are shown to have been received by Gen. Champion, kept under his control as attorney, except the Park claim, and that he was competent and diligent in his business. Whether any loss has occurred, we need not go into particular inquiry to determine. Baxter had done as he agreed and had the right to do by the understanding of the parties, by placing these claims in the hands, or rather, letting them remain in the hands of a competent attorney, who attended the court of the county where the parties lived. As we held before, we see no cause to charge him in reference to these claims. He proposes in his answer to hand over all papers in his possession to the present attorneys, and says he has always been willing to do so, but has never been called on to do so, at his office, by parties ready to receive them. He cannot be held responsible for not handing the papers over on this state of facts. No proof is taken to contradict his statement. They will, no doubt, be turned over on proper application.

We have again carefully examined the Park claim, and did what was not suggested or thought of before,

when this case was examined—had the interest carefully calculated—and find that the real amount due when assigned was what is claimed, and that Baxter did, by mistake, take in discharge of the note, the sum of about $91. This was an oversight, no doubt, but was clearly a mistake, and one for which he must account, as this claim was one in his hands and under his own supervision.

The result is, that he will be charged with balance on the Kennedy claim, as heretofore directed, the $228 in his hands, and also the balance on the Park claim, as stated above; and will be credited by the $401 due him for fees paid clerks, or costs, with interest, and the sum of $121.53, five per cent. on $2,430.75, on claims taken in settlement, as allowed by the master, which was excepted to by complainants, overruled by the chancellor, and no appeal by complainants.

A decree will be rendered for balance on this basis. This is not a case to remand for further proof.