Michael J. SPALDING, Appellee,

v.

Maclin P. DAVIS, Jr., Appellant.

Supreme Court of Tennessee,
at Nashville.

July 23, 1984.

Petition Overruled Sept. 4, 1984.

William H. Woods, Nashville, for appellant.

Hal D. Hardin, Gen. Counsel, Tennessee Bar Ass'n, Nashville, for amicus curiae.

Sidney W. Gilreath, Knoxville, for appellee.

## OPINION

WILLIAM S. RUSSELL, Special Justice.

This is a suit for damages for alleged malpractice by the defendant attorney. The trial judge dismissed the suit following a hearing upon motions by both parties for summary judgment. The plaintiff appealed and the Court of Appeals reversed the trial court and remanded the case for trial. This Court granted the application of the defendant to appeal, and also granted the motion of the Tennessee Bar Association to file a brief as *amicus curiae*. The case has been ably briefed and argued. For the reasons hereinafter set out, we are of the opinion that the case was properly dismissed in the trial court.

The plaintiff, Michael J. Spalding, M.D., in 1977 retained the defendant, Maclin P. Davis, Jr., to represent him in divorce liti-

gation with Mrs. Spalding. The case went to trial. Mrs. Spalding was represented by attorney Jack Norman. After the trial on May 9, 1977, was over the trial judge, Honorable Benson Trimble, took the case under advisement and on May 25, 1977, filed a memorandum, which contained, *inter alia*, this language:

"An absolute divorce shall be awarded the plaintiff [Mrs. Spalding] on the statutorily alleged ground of cruel and inhuman treatment.

. . . .

"The court further is of the opinion that the amount of child support shall be $1,000.00 each month and alimony shall be established in the amount of $2,000.00 each month. Alimony shall be set for a period of nine (9) full years following the entry of the final judgment herein."

Judge Trimble signed this memorandum and it was released to counsel. Mr. Norman, pursuant to the mandate of the memorandum, prepared a "Final Decree" which was presented to Judge Trimble (apparently on June 2, 1977) and signed by him and entered of record on June 7, 1977. This decree included this pertinent language:

"Accordingly, and thereafter, under date of May 25, 1977, the Court did cause to be entered in this cause a Memorandum Opinion, which is hereby made a part of the record and reference made thereto.

. . . .

"It is further ORDERED, ADJUDGED and DECREED by the Court that the defendant, Michael Jon Spalding, pay to the plaintiff, Helen Victoria Nixon Spalding, as alimony, the sum of Two Thousand and 00/100 ($2,000.00) Dollars per month for a period of One Hundred and Eight (108) Months or Nine (9) Years. The first payment shall become due and payable on the 15th day of June, 1977, and the payment shall continue in that amount until the entire amount mentioned above has been paid."

Mr. Davis did, on June 15, 1977, file a motion to amend the judgment "by substantially reducing the attorney's fee of $25,000.00 defendant was ordered to pay plaintiff's attorney." On June 24, 1977, an "Amended Motion to Amend Judgment" was filed, seeking not only a reduction in the attorney's fee awarded to adverse counsel, but also seeking an adjudication of specific visitation rights with the minor children and to provide that Dr. Spalding pay child support by means of a trust to be set up and funded by his stock in the West Side Hospital. The trial judge filed a memorandum on July 26, 1977, indicating his satisfaction with the amount of the fee previously set, and instructing Mr. Norman to prepare an order accordingly. The order, which was signed by Judge Trimble on August 9, 1977, recites that the motion to amend the amount of the attorney's fee is denied, and contains this further language:

"Defendant respectfully excepts to the foregoing action of the Court and prays and is hereby granted an appeal from this order and from the final decree heretofore entered in this cause to the next term of the Court of Appeals in Nashville, conditioned upon defendant filing a proper appeal bond within 60 days. Defendant is allowed 90 days in which to file a bill of exceptions."

Apparently the representation of Dr. Spalding by Mr. Davis ended shortly after the entry of this order. The depositions reveal that defendant had advised plaintiff that he could attempt to get the trial court to reduce the amount of Mr. Norman's fee, but could not represent plaintiff on an appeal of that issue because he had another case pending in the Court of Appeals wherein he was defending the reasonableness of a larger fee that he had been awarded in another case. Dr. Spalding retained another attorney, Honorable Jon Harwell, to handle the matter of a possible appeal of the issue of the attorney's fee. While the appeal that was obtained by Mr. Davis went to the totality of the judgment, Dr. Spalding insists that Mr. Harwell was retained with regard to appealing only the attorney's fee award. It is apparently Dr. Spalding's thesis that he did not consider an appeal of the alimony award, because he

had been assured that it would cease should his wife remarry. At any rate, a settlement of Mr. Norman's fee was negotiated, and no appeal was perfected by attorney Harwell.

On September 27, 1978, Dr. Spalding, then represented by Honorable Joe P. Binkley, filed a "Petition to Reduce Alimony Payments." After an evidentiary hearing, the Court (Judge Benson Trimble, the original trial judge) on December 20, 1978, reduced the alimony payments from $2,000.00 per month to $1,000.00 per month retroactive to September 27, 1978. (There seems to have been evidence that the ex-wife was then living with a man to whom she was not married.) This order was appealed. However, before that appeal reached the Court of Appeals, Dr. Spalding's ex-wife on May 24, 1979, remarried; and upon the application of counsel for Dr. Spalding, an order was entered on July 18, 1979, relieving Dr. Spalding of paying any alimony after the date of the ex-wife's remarriage. This order included this language: "Upon argument of counsel and the Court reviewing the entire file the Court is of the opinion that the alimony award previously granted to the respondent in this cause should be an award of alimony *in futuro.*" This order was also appealed, and the two orders considered together by the Court of Appeals. In a published opinion, *Spalding v. Spalding,* 597 S.W.2d 739 (Tenn.App.1980), filed February 29, 1980, certiorari denied by this Court on April 21, 1980, the Court of Appeals held that the alimony award was *in solido,* rather than *in futuro,* and thus the trial judge could not lawfully modify the amount of the alimony after the judgment had become final.

Thereafter, on December 16, 1980, the plaintiff, Dr. Spalding, brought this action for damages in the amount of $400,000.00 against his former attorney, Maclin P. Davis, Jr., for malpractice. Plaintiff's complaint alleged that defendant assured plaintiff that in the event that his wife remarried, that the alimony would stop, and:

"[W]as negligent in representing him in this cause, in that he failed to ascertain that the divorce decree which was entered in his cause did not comply with the memorandum opinion of the trial judge, failed to ascertain that the attorney for his wife had substituted language in the Decree which changed the intention and wording of the memorandum opinion, all to the plaintiff's detriment, and that such acts failed to comply with the state of the art of attorneys representing litigants in divorce actions in Davidson County, Tennessee."

Both sides filed motions for summary judgment. The depositions of Dr. Spalding, Mr. Davis and attorney Jack Norman were filed, together with numerous exhibits thereto. The plaintiff's motion was overruled and that of the defendant was granted.

The Court of Appeals held that plaintiff's suit was based upon two grounds: (1) entry of a decree differing from the memorandum opinion of the trial judge; and (2) erroneous advice as to the legal effect of the decree. The intermediate court held that neither issue could be appropriately disposed of on summary judgment and remanded for further proceedings.

The parties, the trial and appellate courts, and the *amicus curiae* differ in their statement of the issues for decision in the present posture of this litigation. In our view plaintiff's claim of malpractice against defendant presents two issues. First, did the memorandum opinion of the trial court award alimony *in futuro* and was the decree, "reworded so that it would be much more likely to be construed as an award of alimony *in solido.*" Second, assuming that defendant erroneously advised plaintiff that alimony would terminate "when she remarries," and assuming that plaintiff did not appeal at that time because he relied thereon, did plaintiff sustain any damage as a result of that advice?

■■ This Court, in 1881, approved this rule as to the obligation of an attorney to his client:

"When a person adopts the profession of the law, and assumes to exercise its duties in behalf of another for hire and reward, he must be held to employ in his undertaking a reasonable degree of care and skill; and if any injury result to the client from want of such reasonable care and skill, the attorney must respond to the extent of the injury sustained." *Bruce v. Baxter*, 75 Tenn. 477, 481 (1881).

This rule was later quoted with approval by this Court in *Hillhouse v. McDowell*, 219 Tenn. 362, 410 S.W.2d 162 (1966). The settled general rule in most if not all American jurisdictions is that an attorney to whom the conduct of litigation is entrusted may be held liable to his client for damages resulting from his failure to exercise ordinary care, skill, and diligence, or, as it is frequently expressed, that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys in practice in the jurisdiction. See 45 A.L.R.2d 5, 12. In *Stricklan v. Koella*, 546 S.W.2d 810 (Tenn.App.1976), the Court of Appeals held that "in all negligence cases, whether they be automobile related or medical or legal malpractice related, before a recovery can be had, the nexus between the negligence and the injury must be shown." *Id.* at 813.

▪ With regard to the first issue we find the legal effect of the memorandum opinion and the legal effect of the 1977 decree to be identical, to wit, both awarded alimony *in solido*.

As set out heretofore in this opinion, the memorandum stated unequivocally that:

"[a]limony shall be established in the amount of $2,000.00 each month. Alimony shall be set for a period of nine (9) full years following the entry of the final judgment herein."

Language in the Nebraska case relied upon by the Court of Appeals when the Spalding divorce case reached it for a decision on the nature of the alimony set, i.e., whether *in solido* or *in futuro, Karrer v. Karrer,* 190 Neb. 610, 211 N.W.2d 116 (1973), provided the husband should pay "the sum of $350.00 per month for a period of 121

months as alimony." The court there held that this established alimony *in solido* even though the decree did not set forth the total award as a sum. The Nebraska Supreme Court said:

"It is true that the decree in the present case does not set forth the total award as a sum. But this is not necessary. It is self-evident that the sum, $42,350, is no more certain than $350 multiplied by 121."

In the case at bar, the memorandum of the trial judge stated in clear, unambiguous language that $2,000.00 *shall be paid each month* for a period of *nine full years* following the entry of the final judgment.

The clear legal effect of this language is the same as that embraced in the final decree that was entered pursuant to it. The only difference whatsoever is that the decree tells how many months (108) that are in nine years and says:

"[a]nd the payment shall continue in that amount until the entire amount mentioned above has been paid."

This language is no different in legal effect from the wording of the memorandum, which said that alimony *shall* be *set* for a period of nine (9) *full* years. In neither instance was the calculation made that would have reflected what the total amount would be.

▪ We, therefore, hold that as a matter of law there was no attorney malpractice because of the alleged allowance of a material variance between the memorandum and the decree that flowed from it. There was none.

Plaintiff has not advanced the contention at any stage of this malpractice suit that, on the merits of the case, the award of alimony should have been decreased or made *in futuro* rather than *in solido*. From the facts recited in *Spalding v. Spalding, supra*, it appears that if the 1977 decree had awarded Mrs. Spalding alimony *in futuro* it would have been a patently inadequate award to her, and it further appears that no other modification of the trial court's award favorable to Dr.

Spalding would have been justified at that time.

As heretofore noted, the gravamen of plaintiff's complaint was that the decree entered did not comply with the memorandum opinion of the trial judge and we find that contention to be factually and legally untenable for the reasons stated.

■ With respect to the second issue, it is obvious that plaintiff has sustained no damage if the memorandum opinion and decree were identical in legal import and if the law of Tennessee required interpretation of the decree entered in 1977 as awarding alimony *in solido*.

Plaintiff insists that under *Naron v. Naron*, 218 Tenn. 125, 401 S.W.2d 766 (1966) the wording of the memorandum opinion would "undoubtedly" have been construed as an award *in futuro*. That is simply an erroneous interpretation of the law. It is not necessary to speculate on the extent to which *Naron* may have unsettled the law. Any uncertainty created by *Naron* was rendered certain by the Court of Appeals' opinion and the denial of certiorari by this Court in *Spalding v. Spalding, supra*. The issue that controlled the result reached by the Court of Appeals was, essentially, whether or not *Naron v. Naron, supra* or *Spalding v. Spalding, supra*, correctly interpreted virtually identical trial court awards of alimony. Therefore, our denial of certiorari in *Spalding v. Spalding, supra*, could not be interpreted as concurring in results only, and it follows that we overruled *Naron v. Naron, supra*. The law of the case of *Spalding v. Spalding, supra*, was established by that opinion, to-wit, that the language of the June 1977 decree awarded alimony *in solido* and the award was not subject to change after that decree became final in the trial court. We have held in this case that the language in the memorandum opinion and the language in the 1977 decree were identical in legal effect and awarded alimony *in solido*.

The Court of Appeals held that if plaintiff had appealed that issue in 1977, "this court may or may not have revised the decree so as to retain jurisdiction of the trial judge to alter or terminate the alimony." The notion that a different panel of the Court of Appeals might have reached a different result fails to recognize that the issue would have been brought to this Court by the losing party where four of five members have remained the same since September 1974, and at no time within that period would the 1977 decree in *Spalding v. Spalding, supra,* have been interpreted other than as awarding alimony *in solido*. As the trial judge so aptly put it, plaintiff would merely have learned then what the Court of Appeals rather clearly pronounced later. In any event, speculation about what might have occurred was obviously incapable of proof and fails, as a matter of law, to establish any nexus whatsoever between the assumed erroneous advice and alleged damage sustained by plaintiff.

The judgment of the Court of Appeals is reversed and the judgment of the trial court granting defendant's motion for summary judgment and dismissing this lawsuit is affirmed. Costs are adjudged against plaintiff.

FONES, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.